

**Signed and Filed: July 03, 2009**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 08-30119DM |
| PETER R. FADER dba Urchin Capital Partners, dba Urchin Partners, LLC, | ) |
| Debtor. | ) Chapter 7 |
| _____ | ) |
| SARA L. KISTLER, Acting United States Trustee for Region 17, | ) Adversary Proceeding |
| | ) No. 08-3080DM |
| Plaintiff, | ) |
| v. | ) |
| PETER R. FADER, | ) |
| Defendant. | ) |

MEMORANDUM DECISION ON OBJECTIONS TO DISCHARGE

I. <u>Introduction</u>

Plaintiff Sara L. Kistler, Acting United States Trustee for Region 17 ("UST"), commenced this adversary proceeding against Chapter 7 Debtor Peter R. Fader ("Fader") seeking to deny his discharge. The complaint alleges that Fader failed to explain the loss of funds from bank accounts he owned and controlled from early April, 2005, until the date of his bankruptcy case in January, 2008, in violation of Section 727(a)(5) (First Cause of

-1-

Action).[1]

As an additional count UST alleged that Fader kept no personal books and records regarding substantial cash expenditures in violation of Section 727(a)(3) (Second Cause of Action). Finally, the UST alleged that Fader transferred funds to hinder, delay or defraud a creditor and thus discharge should be denied under Section 727(a)(2)(A) (Third Cause of Action).

Fader denied all material allegations.

Trial was held on May 26, and May 27, 2008. UST appeared and was represented by Patricia A. Cutler, Trial Attorney; Fader appeared and was represented by William F. Abbott, Esq.

The court has considered the testimony of the witnesses, the documentary evidence submitted and the arguments of counsel. For the reasons set forth in this Memorandum Decision, the court will award judgment to Fader and grant him his discharge. Because of this result there is no need to address Fader's unsupported argument that the UST, as an agent of the government, must meet a "clear and convincing" standard of proof rather than a "preponderance of the evidence" standard as advocated by the UST.

II. Facts[2]

In 2005, Fader formed, and was the 100% owner of, Urchin Partners, LLC ("UP"); he also formed Urchin Capital Partners, LLC

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as revised by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

[2] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

("UCP") and owned 76% of UCP, a licensed and regulated broker-dealer. UP acted as the management company for UCP, paying its various expenses under expense sharing agreements. A great deal of Fader's personal expenses were paid by UP and apparently booked by UP as withdrawals of capital.[3]

Fader borrowed millions of dollars personally and did so to keep UP liquid and to permit it to pay various lenders in order to keep UCP operating.

During early 2005, up until the time of his bankruptcy, Fader withdrew varying sums of money from his personal bank account at Wells Fargo Bank, a UP account at Wells Fargo Bank, and another UP account at First Republic Bank.

In March, 2007, Christopher Allick obtained a judgment against Fader for $248,376.70. After that Fader used his personal Wells Fargo Bank account infrequently, stating at trial and in pretrial depositions varying reasons why he did not use the account after the date of the Allick judgment.

Fader filed a voluntary Chapter 7 petition on January 26, 2008. In his amended schedules he disclosed unsecured debt totaling $10,471,054. All of the creditors other than the Internal Revenue Service were marked as "disputed;" nothing was demonstrated at trial that establishes that there are any disputes to those unsecured claims.[4]

Prior to commencement of this adversary proceeding the UST,

---

[3] The court makes no determination whether treating personal expenses as capital withdrawals is proper under applicable state and federal tax law.

[4] The court admonishes Fader's counsel for condoning - or at least permitting - blanket entries of this nature.

Fader's counsel and Fader communicated frequently concerning the UST's desire to unravel confusing accounting records, bank statements, general ledgers, etc. to establish a record of and reconciliation for various transactions in and out of Fader's and UP's and UCP's bank accounts.  By April 1, 2009, UST's financial expert, Ms. Patricia Martin, was unable to account for various disbursements to Fader totaling $235,267 (see Exhibit 3).  That exhibit details $181,920.28 obtained by Fader from the UP bank account.

After Ms. Martin prepared her accounting Fader's accountant, Jill Anderson, submitted a declaration in response to a request to her to analyze the accounting of funds received and expended by UP and UCP between May 1, 2005 and January 31, 2008, on behalf of Fader.  Ms. Anderson provided information previously unavailable to Ms. Martin that caused Ms. Martin to prepare a supplemental declaration (Exhibit 32) wherein she concluded that an additional $381,340 was unaccounted for; in addition to that amount she identified $11,030 of unexplained ATM withdrawals from Fader's personal account, resulting in a total, as of the time of trial, of $627,637 that Fader was unable to account for.  Those amounts were a combination of withdrawals from bank accounts, checks paid to Fader, ATM withdrawals by Fader, and cash paid to Fader for which Ms. Martin found no support.

At trial Fader called as a witness Mr. Brian Dennen who served as UCP's Chief Compliance Officer and who kept the books of UP although he had no position with it.  Mr. Dennen prepared trial Exhibit A, identified as his accounting of the so-called unexplained expenses established first in Ms. Martin's Exhibit 3

-4-

Case: 08-03080   Doc# 49   Filed: 07/03/09   Entered: 07/07/09 09:27:02   Page 4 of 10

and later in her Exhibit 32 (other than the $11,030 in ATM withdrawals). According to Mr. Dennen, Ms. Martin's total could be reduced by $136,014.92 for "cash withdrawals for misc expenses" and an additional $478,995.48 as "items discovered" leaving an unexplained expense of $1,598.30. Exhibit 1 did not deal with the $11,030 in ATM withdrawals identified by Ms. Martin.

Mr. Dennen's explanation is incomplete in that he attempts to explain $348,800 with only four labels: "Repayment to Boal"; "Fader Personal"; "Amy child support"; and "SFCS."[5] The first item represented a $187,500 repayment of an obligation from Fader to Steven Boal that Ms. Martin conceded at trial was a payment Fader properly accounted for.

The entries "Amy child support" and "SFCS" together represent domestic support obligations Fader owed to his former wife or to the San Francisco Child Services Agency for the benefit of his children and relate to the same domestic support obligations. Finally, "Fader Personal" is not analyzed in any detail.

As the trial continued Mr. Dennen and Ms. Martin described their attempts to reconcile Fader's finances. By the time they were finished, Mr. Dennen conceded that at least $74,000 was unaccounted for; there remained an additional $136,014 of cash withdrawals. Mr. Dennen and Fader contended that those two amounts together (rounded to $210,000) had been expended by Fader over a two and one-half year period on meals, taxis, daily expenses, and related charges when Fader was traveling to New York and Boston and conducting his business of UCP.

---

[5] There is a $20,000 disbursement on July 13, 2005, for "broker-dealer exchange" that has not been questioned.

-5-

A significant difference between Mr. Dennen's and Ms. Martin's calculations has to do with payments made to SFCS. She contrasts Fader's contention that he paid $7,500 per month to SFCS, or $90,000 a year, against SFCS's receipts in 2005 and 2006 that she reviewed, and found them to be short by $124,000. The problem the court has with Ms. Martin's approach is that the fact that monies were not paid to SFCS does not mean that they were diverted or unexplained by Fader.

Because the court does not equate nonpayment of child support with unaccounted or unexplained use of actual dollars, Ms. Martin's figure must be discounted; exactly how much is not relevant.

III. Discussion

On an objection to discharge the debtor is entitled to a strict construction of the statutory grounds for objection because of the policy of giving debtors a fresh start. Lansdowne v. Cox (In re Cox), 41 F.3d 1294 (9th Cir. 1994)(citing Matter of Kasler, 611 F.2d 308, 310 (9th Cir.1979) (in turn citing Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)); see, also In re Bugna, 33 F.3d 1054, 1059 (9th Cir. 1994) ("The [Bankruptcy] Code is designed to afford debtors a fresh start, and we interpret liberally its provisions favoring debtors").

The UST as plaintiff has the burden of proving an objection to discharge. Fed. R. Bankr. P. 4005. She has not carried her burden on the Third Cause of Action. While relying on cases such Bernard v. Schaefer (In re Bernard) 96 F.2d 1279 (9th Cir. 1996), that involve actual transfers from one bank account to another to cause a debtor to lose a discharge for a fraudulent transfer or

-6-

concealment, the UST has only proven that Fader generally stopped using his personal Wells Fargo Bank account after Mr. Allick obtained his judgment. There were a few deposits and withdrawals after that. This does not amount to a transfer at all, but rather simply the utilization of a different source of funds. Even if it did amount to a transfer, the UST has not demonstrated that Fader did so with intent to hinder, delay or defraud Mr. Allick or any other creditor or officer of the estate. There is insufficient evidence in the record for the court to draw an adverse inference to satisfy the UST's burden. Accordingly, Fader is entitled to judgment in his favor on the Third Cause of Action.

The First and Second Causes of Actions are somewhat interrelated and present a much greater challenge to Fader. Under §727(a)(5) a failure to account for assets or a deficiency of assets is an element of a failure to keep books. 6 Collier on Bankruptcy ¶ 727.08 at 727-47 (15th ed. rev. 2009). The objector (here the UST) must prove a disappearance of substantial assets, in which case the burden shifts to the debtor to explain those assets. Chalik v. Moorfield (In re Chalik), 748 F.2d 616 (11th Cir. 1984; see also, First Federated Life Ins. Co. v. Martin (In re Martin), 698 F.2d 883 (7th Cir. 1983).

The same initial burden on the plaintiff and subsequent shift to the defendant applies when the charge is failure to keep adequate books and records under § 727(a)(3). Caneva v. Sun Communities Oper. Ltd. P'ship (In re Caneva), 550 F.3d 755 (9th Cir. 2008; Cox, supra. Fader is a sophisticated business person. As such he can be held to a higher standard of accountability and record keeping. Meridian Bank v. Alten (In re Alten), 958 F.2d

1226 (3rd Cir. 1992). And while section 727(a)(3) does not require absolute completeness in the records, it does require a debtor to keep and preserve records that will enable his creditors to accurately ascertain his financial condition and business transactions. Caneva, 550 F.3d at 762, quoting Rhoades v. Wikle, 453 F.2d 51 (9th Cir. 1971).

Efforts by the UST to account for Fader's assets before the adversary proceeding was filed were unsuccessful. After the case proceeded prior to trial, the search for the unknown continued. While a great deal of evidence was submitted, and much of Fader's financial history has been reconstructed (not without substantial effort by the UST) the fact remains that over $200,000 has not been documented with adequate records that Fader should have maintained.

Without adequate records, the debtor must provide adequate explanations. Id., at 762-3, relying on Cox. That case in turn held that justification for failure to keep adequate records will depend on how others in like circumstances would keep their records. Fader offered no such evidence, which is not surprising, given the incompleteness of the records presented and the difficulty first Ms. Martin and then and then Ms. Anderson and Mr. Dennon had in explaining Fader's financial affairs. But the court does not believe that Caneva and Cox foreclose an adequate explanation for incomplete records even in the absence of proof of what others do.

What this case boils down to, then, is whether the court accepts Fader's explanation that he expended over $200,000 drawn from ATM's or cashed from his and UP bank accounts and expended

Case: 08-03080    Doc# 49    Filed: 07/03/09    Entered: 07/07/09 09:27:02    Page 8 of 10

that amount while engaged in his business over a long period of time and while he traveled cross-country frequently, paying for meals, taxis, hotels and other similar expenses. The court does accept that explanation, not because it condones the practice but because it is credible and has not been rebutted. In this day and age it is hard to imagine why many of those expenses would not have been handled by credit cards, and certainly one who deals in cash transactions may draw an inquisitive look. But that is not the point; the critical inquiry is whether Fader has explained satisfactorily the apparent absence of cash (section 727(a)(5)) and justified the lack of records (section 727(a)(3)). He has.

From the foregoing the court has concluded that Fader simply used UP and the proceeds of his friends personal loans to run his business and run his life. He purposely chose a small amount of salary to withdraw from UP, a questionable practice in itself if he was receiving funds for nonbusiness expenses such as payment of personal rent, etc., when those amounts presumably should have been reported as income. This case, however, is not about tax liability. It is about whether, considering all of the circumstances, the UST can unravel this financial quagmire and figure out Fader's financial condition and business transactions, and if not, whether Fader is able to explain a deficiency in his assets to meet his liabilities and why some of his financial transactions lack documentation.

Given the "fresh start" principle and the presumption in Fader's favor, together with the interrelation of the dual requirements of maintaining adequate records and accounting for assets, or explaining the absence of one or the other, the court

Case: 08-03080   Doc# 49   Filed: 07/03/09   Entered: 07/07/09 09:27:02   Page 9 of 10

concludes that Fader is entitled to judgment on the First and Second Causes of Action and is entitled to his discharge.

IV. Conclusion

The court is concurrently entering a judgment granting Fader's discharge.

**END OF MEMORANDUM DECISION**